IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STACY HENDERSON,             )
                             )
        Plaintiff,           )
                             )
vs.                          ) CIVIL ACTION NO. 01-PWG-2504-S
                             )
SAFETY SOLUTIONS,            )
                             )
        Defendant.           )

MEMORANDUM OF OPINION

Stacy Henderson, plaintiff, filed this civil action alleging that Safety Solutions discriminated against her based on her disability in violation the Americans with Disabilities Act ("ADA").[1] The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2.

This matter is before the court for consideration of the motion of defendant Safety Solutions for summary judgment. (Doc. #12). Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine

---

[1] In the complaint, plaintiff also alleged that she was subjected to a hostile work environment in violation of the ADA. In the motion for summary judgment, defendant stated that "plaintiff's counsel has represented that plaintiff will voluntarily dismiss Count One, her hostile environment claim." Although plaintiff has not filed a motion to dismiss this claim, counsel has not disputed that he said that plaintiff would dismiss that claim. Further, in the response to the motion for summary judgment, plaintiff has defined her claim as one that defendant "terminated her because the defendant regarded her as a person with a disability in violation of the [ADA]." Plaintiff has in fact abandoned the hostile work environment claim.

issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following relevant facts are undisputed or, if disputed, viewed in the light most favorable to plaintiff, the non-moving party. Stacy Henderson was employed by Safety Solutions from July 10, 2000 until March 15, 2001. On December 30, 2000, Henderson awoke with intense pain behind her right ear and paralysis on the right side of her face which affected her ability to eat, drink and speak. (Henderson affidavit). She could not chew solid foods. It was necessary for her to drink through a straw. Her speech became very slurred which required that she "work on enunciating

2

certain sounds and certain letters." (Henderson affidavit; Henderson depo., p. 32). In January 2001, Henderson was diagnosed with Bell's Palsy. According to her physician the symptoms would last "anywhere from six to eight months[, a]nd there was the possibility that it might never go away." (Henderson depo, pp. 33-34). Henderson's physician did not place any limitation on her daily activities including on her work. (Henderson depo., p. 36). When Ms. Henderson informed her manager, Charlene Blalock, and the general manager, Jim Benedict, of her situation, Blalock and Benedict were sympathetic. They allowed Henderson time off whenever she requested. Both Blalock and Benedict understood that her condition was temporary. (Blalock depo., pp. 63-64; Benedict affidavit; Henderson depo., pp. 51, 56-57). [2] Ms. Henderson's Bell's Palsy symptoms lasted from late December 2000 through July, 2001. (Henderson depo., p. 36). Mr. Henderson was able to eat without significant impairment by May or June; she was able to drink without significant impairment by the end of July; she was able to speak without significant impairment by the end of June or first of July. (Henderson depo., p. 37).

The Bell's Palsy did not interfere with Henderson's ability to perform her job except that she was self-conscious about making telephone sales calls due to the slur in her speech. (Henderson depo., pp. 42-43, 51-53). Although Benedict and Blalock testified that they did not detect a slur in her speech (Benedict depo., p. 100; Blalock depo., pp. 27, 37), Henderson testified by affidavit that, due to her slurred speech, it was difficult for Benedict and Blalock to understand her. She said that Blalock would ask her to repeat herself over and over again. She would follow up instructions with comments like "if you think you can handle it." According to Ms. Henderson, Mr. Benedict stopped

---

[2] When Henderson was diagnosed with Bell's Palsy, she told both Benedict and Blalock that the diagnosis was Bell's Palsy and that the doctor told her it could take six to eight weeks to recover and that there was "a possibility that it might never go away." (Henderson depo., pp. 51, 56-57).

3

talking with her by telephone altogether. (Henderson affidavit).[3/] On March 15, 2001, Blalock informed Henderson that she was being terminated because she would not make cold calls, forced overtime unnecessarily, was frequently tardy, had ignored office responsibilities for ordering forms and supplies, processing customer orders and returns and failed to replenish stock. (Henderson depo., pp. 79-80; DX 2; Blalock depo., p. 10).

## APPLICATION OF LAW TO THE UNDISPUTED FACTS

Safety Solutions argues that because her condition was temporary, Henderson did not have a disability under the ADA and cannot establish a *prima facie* case under the ADA. To establish a *prima facie* case of discrimination under the ADA, Henderson must show that she "(1) had, or was perceived to have, a 'disability'; (2) was a 'qualified individual;' and (3) was discriminated against because of her disability." *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1215 (11th Cir. 2004). The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Henderson states that she is proceeding only under 42 U.S.C. § 12102(2)(C). (Doc. #17, p. 7).

In *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999), the United States Supreme Court elaborated on the "being regarded" aspect of disability:

> There are two apparent ways in which individuals
> may fall within this statutory definition [of being

---

[3/] There is a relevant omission in her affidavit in that Henderson does not state how frequently she had communicated with Benedict by telephone prior to her diagnosis with Bell's Palsy. She testified that she had two telephone conversations with Benedict after her diagnosis, one in January in which she told him of her diagnosis and one in February when she told him she could not make the cold calls. (Henderson depo., pp. 45, 85).

4

> regarded as having a physical or mental impairment that substantially limits one or more of the major life activities of such individual]: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual – it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

Henderson asserts "There is substantial evidence in the record to support a finding that Safety Solutions regarded Henderson as an individual with an impairment that substantially limited a major life activity." (Doc. # 17, p.8). She does not identify the alleged misperception that Safety Solutions had about her. Ms. Henderson has asserted that "Safety Solutions had actual knowledge that Henderson had a condition that substantially limited her ability to speak," (Doc. #17, p. 9) it does not appear that she contends that Safety erroneously believed she had a substantially limiting impairment, but rather that Safety Solutions believed that she had a substantially limiting impairment when, in fact, the impairment was not actually limiting. Henderson, however, also asserted that "Henderson's supervisors believed that Henderson's impairment limited her ability to communicate with them, an essential function of her job." (Doc. #17, p. 9). In support of this assertion, plaintiff states:

> There is also evidence in the record that Henderson's speech was severely slurred and that this frustrated both Benedict and Blalock. Their frustration with Henderson's condition is evidenced by the fact that (1) Blalock would ask Henderson to repeat herself over and over again, 2) Blalock would follow up on instructions with comments like "if you think you can

5

> handle it," and 3) the fact that Benedict just quit talking with Henderson by telephone altogether. See Henderson Affidavit.

(Doc. #17, p. 9).

In *Carruthers, supra*, the Eleventh Circuit Court of Appeals held:

> In order for any ADA claim to succeed, the claimant must show that her condition of impairment rises to the level of a disability. ... Under the "regarded as" prong, a person is "disabled" if her employer perceives her as having an ADA-qualifying disability, even if there is no factual basis for that perception. ... <u>As with actual impairments, however, the perceived impairment must be one that, if real, would limit substantially a major life activity of the individual.</u>

357 F.3d at 1215-16 (emphasis added.).

The term "major life activities" is defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). In determining whether an impairment substantially limits a major life activity, the court should consider : (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

In *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002), the United States Supreme Court went further and held that before for an impairment in performing manual tasks substantially limits a major life activity, "[t]he impairment's impact must also be permanent or long term." See also, *Carruthers*, 357 F.3d at 1217.

Although Henderson argues that she was <u>regarded</u> by Safety Solutions as having an impairment (Bell's Palsy) that limited one or more major life activities (the ability to speak and the

6

ability to work), the evidence is clear that she was not regarded as having a qualifying impairment due to the temporary nature of her condition which was not expected to last, nor did it last, more than six to eight months. Moreover, the only residual effects of the Bell's Palsy is that when Henderson gets very fatigued, one side of her face becomes very weak, it becomes difficult for her to move one side of her mouth, and her eye gets weak. These effects disappear after a good night's rest. Because the impairment was not permanent, Henderson has failed to prove the disability element of a *prima facie* case of discrimination. Because Henderson failed to establish a *prima facie* case of discrimination, the court does not reach the issue of pretext in her termination.

Based on the foregoing, the motion for summary judgment is due to be granted. A separate Final Judgment consistent with this Memorandum of Opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the __30th__ day of September, 2004.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE